UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABDUL FIELDS,<br><br>   Defendant. | Case No. 25-MJ-270 |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION**

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(E) (Felony Involving Possession or Use of a Firearm) and under 18. U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole) as the Defendant, Abdul Fields, is charged with violating 18 U.S.C. § 922(g)(1) (Unlawful Possession of Ammunition) and 22 D.C. Code § 4503(a)(1), (b)(1) (Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (Crime of Violence)). The Defendant stands before this Court charged with illegally possessing a privately manufactured firearm ("PMF") loaded with one round of nine millimeter caliber ammunition in the chamber and eleven rounds of nine millimeter ammunition in a seventeen-round magazine. The Defendant engaged in this conduct at the very same location where he shot and killed a member of the community during an attempted robbery back in 2015, an offense for which the Defendant is currently on supervised release. Due to the Defendant's extremely troubling history, a review of the 3142(g) factors shows that no condition or combination of conditions will reasonably assure the safety of the community.

## BACKGROUND

On November 20, 2025, the United States filed a complaint charging the Defendant with Unlawful Possession of Ammunition, in violation of 18 U.S.C. § 922(g) and 22 D.C. Code § 4503(a)(1), (b)(1) (Unlawful Possession of a Firearm by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year (Crime of Violence)). On the same day, the initial appearance was held before the Honorable Magistrate Judge Zia Faruqi. After the United States made a motion for pretrial detention, the Court set a detention hearing for November 24, 2025.

### *The Instant Offense*

On November 19, 2025, Metropolitan Police Department Officers Ihsan Ozdemir (driver), Westley Grant (rear passenger) and Stephen Washington (front passenger) were in a marked DC Metropolitan Police Department vehicle, in full Metropolitan Police Department uniform patrolling along with federal partners from the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI) and United States Park Police (USPP). The above-mentioned officers and agents were dressed in their respective uniforms of the day displaying their badges of authority and/or wearing ballistic vests clearly labeled "POLICE."

At approximately 8:12 PM, the officers were in the vicinity of Tyler House Apartments, located at 1200 North Capitol Street NW, when Officer Washington observed Abdul Fields (hereinafter "the Defendant") standing on the sidewalk in front of the building along North Capitol Street. Officer Washington recognized the Defendant from one or more prior interactions and had pre-existing knowledge that the Defendant had an open arrest warrant.

Officers detained the Defendant on the pending warrant and then confirmed the outstanding

DC Superior Court arrest warrant for Simple Assault through WALES/NCIC as well as the First District dispatcher. The warrant number was 2025 CRWSLD 005049, in CCN 25143753, issued on November 18, 2025, by the Honorable Judge Robert Salerno. Once the warrant was confirmed, officers placed the Defendant under arrest pursuant to the warrant.

During a search incident to arrest, MPD officers found a handgun tucked into the Defendant's front waistband.



*Figure 1: Still image of firearm in Defendant's waistband*

When officers attempted to complete the search of the Defendant, he attempted to pull away by tensing his body and pulling his arms away while trying to reach for the handgun in his waistband. After a struggle with the Defendant, during which the Defendant head-butted an MPD officer in the chest, MPD officers were able to remove the handgun from the Defendant's waistband. Moments after the gun was recovered, the Defendant told officers, referencing the recovery of the

firearm, "Shit I'll be back. That shit ain't nothing." When the officer responded, "You're a felon too," the Defendant replied, "I don't give a fuck. Eat my dick…I'm superman."

District of Columbia Department of Forensic Sciences processed the firearm at MPD's First District station. The firearm was a Polymer 80, nine-millimeter, privately manufactured firearm ("PMF"), also known as a ghost gun. The firearm was loaded with one round of nine-millimeter ammunition in the chamber and eleven rounds of nine-millimeter ammunition inside of a magazine with a capacity of seventeen rounds. The firearm did not have a serial number.



*Figure 2 Firearm lacked a serial number*

A check of MPD's firearm registration database revealed that the Defendant did not have a license to carry a firearm in the District of Columbia.

The Defendant has a prior felony conviction in the District of Columbia for Voluntary Manslaughter, Superior Court Case No. 2015 CF1 3404, for which the Defendant received a sentence of 102 months of incarceration.

**Defendant's Criminal History & Performance Under Supervision**

The Defendant has a history extending back to at least 2012 of using firearms during the commission of violent crimes in the District of Columbia.

2015 CF1 3404 – Voluntary Manslaughter Conviction

According to the factual proffer from the Defendant's plea agreement (Exhibit 1), on May 30, 2014, at approximately 9:35 PM, the Defendant and two associates attempted to rob the victim in a parking lot in the rear of Tyler House Apartments, the same location where the instant conduct occurred. When the victim resisted, the Defendant fired a handgun at the victim, striking him in the chest. The victim ran a short distance before collapsing and later succumbing to the gunshot wound.

The Defendant was presented on March 11, 2015, and ultimately accepted a plea offer on March 10, 2017, to Voluntary Manslaughter, and was sentenced to 102 months of incarceration, followed by 3 years of supervised release. The Defendant was released on February 15, 2024, and has been on supervised release ever since.

2013 CF3 1564 – Robbery Conviction

According to the factual proffer from the Defendant's plea agreement (Exhibit 2), on January 25, 2013, the Defendant and an accomplice entered a 7-Eleven wearing ski masks and robbed the store clerk and customers at gunpoint. The Defendant fled the scene in a stolen vehicle but crashed and then fled on foot. He committed the offense while under GPS monitoring for a prior matter's supervised release. The GPS data led to his identification as one of the perpetrators in this case.

The Defendant was sentenced to 18 months of incarceration under the Youth Rehabilitation Act, followed by three years of supervised release. According to the Pretrial Services Report filed

ON March 11, 2015, in 2015 CF1 3404, he failed to appear for drug testing under the terms of his supervised release.[1]

Open Simple Assault Matter – CCN 25143753

As discussed previously, the Defendant was initially detained on November 19, 2025, because officers recognized the Defendant and knew there was an outstanding warrant for his arrest. That warrant relates to a simple assault committed on September 19, 2025, inside of the Tyler House Apartments building. According to the arrest warrant in the matter, video surveillance captured the Defendant repeatedly punching the victim while inside of Tyler House Apartments. This warrant remains outstanding at the time of the filing of this memorandum.

## LEGAL AUTHORITY AND ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and *Williams*, 798 F. Supp. at 36.

---

[1] The Government would refer the Court to the Pretrial Services Report for additional details relating to the Defendant's prior history

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a Defendant] as required and the safety of any other person and the community," the Court shall order a Defendant held pending trial. 18 U.S.C. § 3142 (e). The Act provides however, for certain crimes, that there is a rebuttable presumption that no conditions or combination of conditions will assure the safety of the community. *See id.* "For the purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a Defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(E) (felony involving a firearm) because the Defendant is charged with committing a firearm offense. The United States is also seeking detention pursuant to 18. U.S.C. § 3142(d)(1)(A)(iii) (On Probation or Parole) as the Defendant was on probation in D.C. Superior Court case 2019 CF1 009154 at the time of the instant offense. A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

### I.     The Nature and Circumstances of this Offense Merits Detention

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The Defendant is charged with a serious offense carrying a significant

penalty. For violating 18 U.S.C. § 922(g), the Defendant faces a maximum sentence of up to 15 years imprisonment pursuant to 18 U.S.C. § 924(a)(8). Here, compelling evidence clearly shows that the Defendant carried a loaded firearm concealed in his pants. The weapon was readily accessible to the Defendant, and it had a chambered round with an additional eleven rounds in the magazine. There is no indication that the weapon was inert or otherwise inoperable.

As a threshold matter, the Court has repeatedly held that possession of a firearm, when loaded or carried in a concealed manner as in this case, poses a risk of danger to the community. *See, e.g., United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence," particularly when Defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020); *United States v. Gassaway*, No. 21-cr-550 (RCL), 2021 U.S. Dist. LEXIS 175978 at *9-10 (D.D.C. Sept. 16, 2021) (collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 U.S. Dist. LEXIS 172978, 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community."); *see also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a Defendant should be detained pretrial in part because "the firearm recovered from the Defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearm recovered from had many of these troubling characteristics, and more broadly, the firearm was loaded and ready to fire when it was recovered. Simply stated, unlawful gun possession is so problematic, especially by someone with the Defendant's criminal history, because of the number of violent gun crimes committed in the District.

Additionally, the firearm recovered from the Defendant's bag was a privately manufactured firearm, also known as a ghost gun. Ghost guns are untraceable firearms without serial numbers that are privately made, assembled by individuals from parts or purchased as Do-It-Yourself kits or that include one unfinished piece, typically the frame or receiver, that requires the purchaser to take steps (such as drilling) to make the gun fully functional. Ghost guns pose a unique risk to the community because their creation and possession circumvents background checks, which would have prevented the Defendant from possessing a firearm as a convicted felon. Indeed, between 2017 and 2023, law enforcement recovered 92,702 untraceable ghost guns, which were obtained without background checks and do lack serial numbers. Moreover, the number of ghost guns recovered in crimes across the United States surged nearly 1,600% (from 1,629 to 27,490) with almost 1,700 being connected homicides and over 4,000 linked to separate violent crimes.[2] Given the above, the nature and circumstances of this offense weigh heavily in favor of detention.

II.     **The Weight of the Evidence Against the Defendant is Strong.**

The second factor to be considered, the weight of the evidence, strongly weighs in favor of detention. Indeed, the Government's case against the Defendant is strong. First, officers had probable cause to approach and detain the defendant based on the pending arrest warrant. Officers recognized the Defendant from prior interactions and knew that a warrant had been issued for his arrest. Officers therefore had probable cause to detain the defendant. Once they confirmed in the WALES/NCIC system that the warrant was in fact still active, they were required to arrest the Defendant. The ensuing search was proper and recorded on body worn camera. The evidence of the Defendant's actual possession of the firearm is incontrovertible - body worn camera captured

---

[2] https://www.justice.gov/archives/opa/pr/justice-department-announces-atfs-publication-final-volume-national-firearms-commerce-and (Last visited June 17, 2025)

the discovery of the firearm in the Defendant's waistband.[3]

### III. The Defendant's History and Characteristics Merit Detention.

The third factor, the Defendant's history and characteristics, also weigh heavily in favor of detention. The Defendant was convicted of one of the most serious acts one can commit – the violent and unlawful taking of another's life. The plea allocution from the Defendant's Voluntary Manslaughter conviction shows not only the Defendant's willingness to carry a firearm in the community, but his willingness to use an illegal firearm[4] for violence. The defendant admitting to producing that firearm during an attempted robbery and shooting and killing a member of this community, and now he is accused of carrying a firearm at the very same location as the homicide. He is *further* accused of assaulting another member of the community at that location – an assault that was captured on video surveillance.

Moreover, the Defendant's history and characteristics show that he will not comply with any court orders that would ensure he is not a danger to the community. The Defendant has been on supervised release in the community since February 2024. Less than two years later, the Defendant is alleged to have committed two new offenses at the location of the homicide, both of

---

[3] The weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30. Instead, "the weight of the evidence against [a] Defendant [should] be weighed as all factors are—in accordance with the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight than any other factor. "If the evidence against a Defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that Defendant will flee to avoid future court proceedings and may indicate that the Defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. And so it is in this case, the weight and strength of the evidence increases the prospect that the Defendant will present a danger to the community if released.

[4] At the time of the offense, the Defendant had been convicted of a felony, so he was prohibited from possessing or owning any firearms.

which are supported by strong evidence, while on supervised release. When arrested for the instant offense, the Defendant's initial reaction was to promise to flout the law, bragging that he would "be back," that the arrest "ain't nothing," and that he did not "give a fuck."

Finally, his prior history preceding the homicide indicates he will not comply with any release conditions. He committed the homicide while on supervised release in 2013 CF3 1564. He committed the robbery in 2013 (2013 CF3 1564) while under GPS monitoring as part of his post-release supervision from a prior offense. There is simply no basis for believing that the Court could fashion conditions that would ensure the Defendant does not pose a danger to the community.

### IV.   The Defendant Presents a Danger to Our Community.

The fourth and final factor, danger to any person or the community posed by the Defendant's release, overwhelmingly weighs in favor of detention. "At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The Defendant's possession of this firearm alone presented a significant danger to our community. *See United States v. Washington*, 907 F. Supp. 476, 486 (D.D.C. 1995) ("[P]ossession by a felon of a fully loaded semi-automatic pistol suggests that the Defendant presents an extreme safety risk to the public."). As noted above, the Defendant has previously engaged in this exact behavior, with fatal consequences. This alone poses a danger posed to the community. Add to that the Defendant's unwillingness to abide by his conditions of supervised release, this Court is presented with an individual who is a danger to the citizens living within the District.

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing

evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *Munchel*, 991 F.3d at 1280 (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)). This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

Here the Defendant poses an obvious and articulable threat to the community, as evidenced by his recidivism and his failure to obey court orders.[5]

## CONCLUSION

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

                                                  Respectfully submitted,

                                                  JEANINE FERRIS PIRRO
                                                  UNITED STATES ATTORNEY

By:   *s/ Travis Wolf*
      TRAVIS WOLF
      Assistant United States Attorney
      NY Bar No: 5483243
      United States Attorney's Office
      601 D Street, NW
      Washington, D.C. 20530
      Telephone: 202-803-1670
      Travis.Wolf@usdoj.gov

---

[5] For a comparative case, the Government would direct the Court to *United States v. Linnell Shelton*, 25-cr-186. There, the Court detained a Defendant who had a prior conviction for voluntary manslaughter and a history of lack of compliance with supervision.